Case, Continental Tire North America v. The Workers' Compensation Commission, 5090217. Counsel, please. Good morning, Your Honors. May it please the Court, Mr. Crosby. My name is Sherrilyn Shbaya. I'm here on behalf of Continental Tire, the employer in this appeal. Mr. Cook sustained an uncontested work accident on May 11, 2006. Continental Tire accepted liability with regard to Mr. Cook's left knee, but disputed liability with regard to Mr. Cook's right knee. The issues on appeal involve some evidentiary rulings by the arbitrator, as well as the finding of causation between Mr. Cook's right knee and his work accident, the amount of credit that was given to Continental Tire related to benefits paid to Mr. Cook while he was off work, and the Commission's award of penalties. The standard of review with regard to the issue of causation, and I'm just limiting my arguments to causation, penalties, and the 401k if there's time, is whether or not the Commission's finding of causation was against the manifest weight of the evidence. As I stated earlier, on May 11, Mr. Cook fell down a set of stairs at work. The initial reports regarding the injury indicated he fell down the steps, hitting the front of his legs, but landing on his left knee. After the fall, he's examined at the plant nurse's station, presented complaining of left knee pain only, reported he slipped on the steps, landed on his left knee. There's a claimant statement of events in that he reports he fell down the stairway and landed on the concrete with his left knee. He's then taken to Crossroads Hospital by a security guard. When he gets to the hospital, he reports that he fell and sustained a direct blow to his left knee, complained of moderate pain in his left knee only, and x-rays were taken of his left knee with the recommendation that he probably have an MRI on that same left knee. After he was released from the hospital, he returned to the plant and was recommended to see Dr. Byler, but since he was unavailable, he saw a nurse by the name of Lisa Thompson. At that visit, he stated he fell down the stairs and landed on his left knee, hitting the concrete, and his complaints were of grinding and pulling pain on both sides of his left knee. Mr. Cook was eventually seen by Dr. Balmer on May 23, 2006, which was 11 days after the accident. At that time, he reported sustaining a direct blow to his left knee. The examination of his left knee revealed exquisite tenderness over the inferior lateral area of his patella, as well as the posterior medial joint space. Now, in addition to the left knee complaints, Dr. Balmer also examined the right knee at that time. He found that the right knee had good extension, good stability, his skin was intact. The examination further revealed no areas of discomfort, no clinical effusion, and no varicosities. Based on the examination and MRI, Dr. Balmer diagnosed a torn meniscus and a contused patella on the left knee and recommended surgery. No treatment was recommended for the employee's right knee. The surgery was performed. Two weeks after the surgery, now a month and a half after the accident, Mr. Cook began expressing complaints regarding his right knee. Two follow-up visits with Dr. Balmer provided no diagnosis, although Dr. Balmer did make the comment that the injury could have occurred during the accident. And he basically says that the left knee was, because there was a medial meniscus tear in the left knee, that overrode the pain that he might have had in his right knee. Well, moving forward through the treatment, an MRI is eventually performed, and on August 22, Dr. Balmer then diagnoses a medial meniscus tear, which is the exact same injury he found on the left knee, to be in the right knee. There was an MRI that demonstrated that, was there not? That is correct, Your Honor. In September, Mr. Cook was sent for an IME with Dr. Ralph. At that time, Dr. Ralph didn't recommend any additional treatment for the left knee. With regard to the right knee, Dr. Ralph eventually diagnosed a torn medial meniscus that opined that the knee condition was not related to the accident, and his opinion was based on the lack of reference of right knee complaints, the details of the accident, as well as specifically noting Dr. Balmer's examination of the right knee on May 23. In December, the petitioner goes to Dr. Goltz, who also diagnoses a right torn medial meniscus, and opines that it is his opinion that the incident occurred in the work accident because he was advised by Mr. Cook that he landed on both knees at the bottom of the stairs, which was different from everything that had been said prior to that time. The interesting part about Dr. Goltz' teeth was deposed on January 12, and at that time he confirmed that the initial medical records following the work accident didn't reveal any swelling, discomfort, or abnormal findings in the right knee, and then testified that typically he would expect someone who tore a meniscus during a traumatic injury to have those findings on examination. Clearly those findings were not seen when Mr. Cook was examined on the 23rd of May, 11 days after his accident. Based on this evidence, the arbitrator and the commission both found that the employee sustained an injury to his right knee, and Continental Tire has controverted this finding to be against the manifest weight of the evidence due to the fact that all of the treatment rendered up until June was for the left knee. There's no sign of any injury to his right leg at any of the reports, any of the records at the hospitals, any of the doctors he saw up until June. Let me ask you, wasn't there a report by Nurse Thompson the day after the accident that claim and statement to her was that both legs were involved in the fall? That he hit the front of both of his legs on his way down, but landed on his left knee. That's correct, Your Honor. But if you look at the notes at the hospital, there's actually a note in one of the comments section finding abrasions on the front of his leg, but the only leg that's mentioned is the left leg. So, like I said, it's the opinion of Continental Tire that the finding of causation between the right knee and the work accident is against the manifest weight of the evidence. Even if you were to find that causation was correctly found by the commission, which we don't think you should, but even if you did, Continental Tire has also appealed the award of penalties and attorney's fees because they're against the manifest weight of the evidence and contrary to law. Generally, when an employer acts in reliance upon a reasonable medical opinion or when there's conflicting medical opinions, penalties ordinarily are not imposed. The relevant question is whether the employer's reliance was objectively reasonable under the circumstances. And the employer actually bears the burden of showing that it had a reasonable belief and that the delay was justified. In this case, the commission, in its decision, specifically found that the employer's denial of the right knee was justifiable based on its reliance on Dr. Rao. They specifically state a respondent's reliance on the report of Dr. Rao regarding petitioner's right knee injuries was justifiable. The basis for awarding penalties is if the employer's actions were unreasonable and vexatious. And it's hard to see how the employer's actions could be vexatious or unreasonable if the employer specifically found, or the commission specifically found that the employer's actions were justifiable in relying on Dr. Rao's report with regard to the right knee. Let's explore that for a second because there seems to be an inconsistency. It appears the record establishes that Continental removed claimant from light duty work on December 11th and cut off all medical treatment and TTD benefits on December 13th. Supposedly reliance upon Dr. Rao's opinion. But it appears that Dr. Rao's opinion was not readied until a month later after everything had been cut off. So how do you rely on an opinion a month after you've cut off the benefits? Dr. Rao's initial report was dated September 5th, 2006. Okay. And in that he found that no restrictions were necessary for Mr. Cook with regard to his left knee. He then has another report that's in October which is specifically addressing the right knee. So all of that was before the December. It was before the benefits were cut off? Correct, Your Honor. Okay. And that kind of moves into the second half where if the commission's finding our actions were reliable or it was reasonable for us to rely on Dr. Rao with regard to the right knee, they never addressed the fact that Dr. Rao said that he did not need any restrictions in September with regard to his left knee, which is an opinion that Continental Tire relied upon. When we get to December and suddenly Dr. Volz is saying, oh, he needs treatment for his right and his left knee. The right knee we didn't think was possibly connected, but our own doctor said that he didn't need any restrictions, which would imply that no further medical treatment was necessary. So based on the case law that explains why penalties are usually handed out to an employer in a worker's compensation case, it's our opinion that the commission's award of penalties and attorney's fees, which encompass both the TTD and the medical expenses for both the right and the left knee, is against the manifest way and contrary to law. Even if you get beyond the merits of the argument, it goes one step beyond, because as I stated earlier, there was an issue with regard to the 401k payments that were made, whether those should be credited or not. But even if those are not included, the award for TTD benefits was $678.40 for 17 and 17 suites, which equates to $11,629.71. Continental Tire was granted a credit in the amount of $10,709.97, leaving a balance due on the TTD of $919.74. We were whacked with penalties on an amount of $3,586.02. So we have a serious math calculation problem, even if you get beyond the commission's finding that our reliance was justifiable and that we had a medical opinion we were relying on for the left knee as well. And the same kind of thing happens with regard to the medical expenses, because both the commission and the arbitrator stated that the respondent was entitled to a credit for all group insurance medical payments for the treatment of injuries, but there's nowhere in the record where anyone looked to see what group health may have paid, and whereas the one hospital bill from Crossroads showed a zero balance, they have awarded penalties on an amount that was credited without addressing the fact that there was a credit granted. So I don't think you can award penalties on an amount that may have been paid and was certainly credited with regard to TTD benefits, which the record clearly showed what was paid there, and the medical expenses, no one looked to see what group health had paid. It's our position that the penalties and attorney's fees should never have been awarded in the first place because we don't think the causation was ever there between the right knee and the work accident based on every statement he gave to every treating physician up until June following the accident. And since I don't have a light on yet, if you don't mind, I'd briefly like to address the issue of the credit that came or that didn't come out of the 401k benefits. We have asked for a statutory interpretation review with regard to Section 8J of the Act, which specifically allows a credit to the employer for amounts paid to the employee from the group health plan. And I think the issue from what I've seen from looking at Mr. Crosby's brief as well as our own is pay to the employee. In this case, Mr. Cook had a 401k loan that he was paying back, and he was also making contributions to his 401k. When the group health benefits were paid to Mr. Cook, those payments, both the repayment of the loan as well as the contributions, were automatically made for him. And essentially, the commission majority agreed that the credit shouldn't be given. They affirmed the arbitrator's decision with regard to that, which is eventually saying because we did not pay that money directly to him, but we directed it somewhere else, it was not a payment to him. Commissioner Lindsey actually filed a dissent, disagreeing, thinking the credit should have been awarded because the funds were automatically deducted for the employee's benefits. Can I ask you a question? I'm a little confused about these penalties. Penalties were assessed for your cutting off of TTE back in, I guess, December. And you contend that you had a right to rely on Ralph's letter of September? In October, Your Honor. In October, he didn't issue any opinions on the left leg in October. He issued opinions on the right leg. Right. His opinion on the left knee is in his September 5th letter. Not according to the arbitrator's opinion. Well, there's a few problems with what is in the argument. He says he reserved his opinion. He wanted to look at a film. In addition, he said that no restrictions were necessary for Mr. Cook, but he wanted to look at a film. Now, the issue of the film is basically a red herring because the only film that Dr. Ralph would have been looking at would have been the MRI that was taken on May 12th, 2006. Looking at that MRI is not going to tell a physician if somebody is able to go back to work when the employee had surgery on that knee in June and clearly whatever condition was on the original MRI in May was not going to still be the issue in September when he's seeing two months post-surgery. The issue with the MRI had to do with causation with regard to the left knee. And so the left knee was covered by Dr. Ralph in September. The right knee was addressed in October. I'm confused. Did he or did he not say he reserved his opinion on the left knee until he could look at something else? Did he say that or did he not? He did say that, Your Honor. And from that you take that he's given you an opinion that there's nothing wrong with the left knee? Yes, because his opinion specifically states that there was no— and I'm going to get you the direct quote of it— that no restrictions—it's a passive sentence, Your Honor. Counsel, you'll have time on rebuttal. I will get the quote during that. Thank you, Your Honor. Counsel, please. This is Honorable Court. My name is Tom Crosby. I represent the petitioner. I'd first like to entertain any questions from the panel. Straighten out this problem that I have with these left knee, right knee, and Ralph's opinion. I don't believe that Ralph addressed the left knee in September. And what counsel is basically saying is that because he wouldn't put any restrictions on this patient in September with regards to the left knee, that you can infer from that that Ralph was also giving the opinion that there was no medical necessity under Section 8A for continuing medical. If you can infer restrictions equal further medical in the light of two treating physicians saying that he needs further strengthening of his left knee, I don't know. And also, Your Honor, with regard to what Ralph did at what time, if Ralph entered an opinion in September that the left knee didn't need any further treatment, if he did that, then under the rules governing practice, once they've accepted responsibility for medical, they have a duty to explain in writing at the earliest moment why they're no longer paying medical. They didn't do that. And that was one of the things the arbitrator pointed out, that if you initially accept medical, in this case they did for the left knee, and then you cut it off, you can't do so arbitrarily. You have to give written notice to the petitioner, the injured employee, as to the basis of that. They didn't do that. And that was one of the tangential and corollary points that they used to support the penalty. And throughout her argument and throughout the respondents' presentation of this case, they continually ignore one fact. And I think that you picked up on it. And that is that both the left and the right knee required this gentleman to be off work because they didn't give him any light-duty work. Now they're saying, well, we've defeated causation. Basically they want you to retry the facts. But we've defeated causation as to the right, so the penalties don't apply. But Dr. Goltz, Dr. Balmer both said that medical was necessary to strengthen that left knee because they actually thought that the right knee was caused, if not by the initial fall, where he's bouncing down 15 stairs on his shins and knees, it was caused by a contralateral imbalance by him being non-weight-bearing on his left. But they all say he needs treatment. And he was prescribed physical therapy throughout the period of time that they're saying that the penalty shouldn't be awarded for. What is the basis for them not paying the left knee? There was none. I'll rely on my brief as to the other issues. But as to the credit, one, I don't think it's an issue at all. I think it's fact-based in light of what happened in these particular circumstances. The Continental Tire is constantly trying to get out of TTP by shifting onto their group health. Their group health and their disability. But they automatically deducted from his group disability a repayment of a loan. So he didn't get that. They automatically deducted a contribution to the 401K. So he didn't get that. He wasn't paid that money. Do you have any authority? Do you have any case law that you can cite on that issue? No, I don't. Other than the language of the statute itself, which says expressly, money is paid to. And if you withhold money, which they did, they automatically withheld it. They deducted it. They're not paying it. If nothing else, I'll rely on my brief. Thank you, counsel. Ms. Arnold? Your Honor, just for the record, I don't believe there's anything in this record that says that General Tire has a policy of constantly shifting all of the burden to the group health. But regardless, getting back to the original question that you asked me, Your Honor, the specific quote from Dr. Ralph was, With regard to this patient's left knee, I see no reason as to why restrictions need to be placed on this. And in addition to that, when he examined him, the examination of the left knee revealed a full range of motion, no evidence of any meniscal signs, no effusion, normal quad and hamstring strength. But Mr. Crosby has addressed to you today, and I'm not going to address the 401K because I think it is a matter of statutory interpretation as to how this court thinks that should be interpreted, but he did receive the therapy. Dr. Balmer recommended therapy. He went into physical therapy, and he continued in physical therapy until the end of August. After August, there were no further recommendations for treatment on his left knee by Dr. Balmer. He then sees Dr. Ralph, who had the statements that I just quoted to you earlier, which certainly do not indicate that any further treatment is needed. So you have a gap from the end of August, and I think it is very late August, it's like the 26th or the 28th, where there is no treatment rendered for Mr. Crook's left knee. And then suddenly, you know, four months later, we now need to treat it again, even though nobody's seen him and there's nothing happened, and oh, by the way, now we have this right knee problem that really could not have occurred during the accident based on the examination from Dr. Balmer. Like I said, it's our position that the causation finding was against the manifest way to the evidence, and even if that wasn't the award of penalty, certainly what were, based on the amounts that were awarded on mathematical error, as well as the fact that Continental Tire was clearly relying on the opinion of Dr. Ralph with regard to the left knee in the sections that I just read to you, and the Commission itself found that our reliance on Dr. Ralph with regard to the right knee was justifiable. After you received the letter in September, what type of work did you put him on in the plant? He was on, well, almost sedentary. It was sit-down duty. He had a golf cart that he rode around in at the plant to do, because this is his... The nurse actually took him from place to place in the plant? I don't know if he drove it or somebody else did, but he was on a golf cart to get from place to place because the stairs were so difficult for him to take, which is certainly understandable. And this was even though you'd received the letter, there were no restrictions on it? That's correct, Your Honor. Are there any further questions? Thank you, counsel. The court will take the matter under advisement for disposition.